# HOTTENSTEIN *v.* HOTTENSTEIN.

### [No. 23,555.   Filed January 11, 1922.]

1. **WITNESSES.** — *Establishment of Lost Will.—Beneficiary.— Competency.—Matter Occurring Prior to Testator's Death.— —Statutes.*—In an action to establish an alleged lost or destroyed will, a son of testator who benefited by the will was not a competent witness to prove, either directly or indirectly, that testator signed and certain other persons witnessed the alleged will and codicil, whether by proving the handwriting of the testator and the witnesses or otherwise, nor was he competent to testify that a paper produced by him was a copy of decedent's will, or of papers bearing the genuine signature of his father and witnesses, or otherwise to identify papers found in his father's desk as having been executed by him, although he was competent to testify that after his father's death certain papers were found in his desk, and that he made a copy of those papers, and to identify the copy, under §522 Burns 1914, §499 R. S. 1881, as to the competency of heirs or devisees to testify as to matters occurring prior to the death of the ancestor.   p. 462.

2. **APPEAL.**—*Review.—Admission of Evidence.—Cure of Error by Cross-Examination of Incompetent Witness.*—In an action to establish an alleged lost or destroyed will, error in permitting beneficiary under the will to testify that signatures to papers found in decedent's desk, claimed to be the will and codicil, were those of the alleged testator and witnesses, was not rendered harmless by questions propounded on cross-examination of the witness which did not bear directly upon his knowledge of the testator's handwriting, but rather upon the knowledge of the handwriting in which certain papers were drawn to which testator's name was subscribed, and upon his business relations with testator in connection with some contracts produced by the witness which he said bore a signature that was his father's; the contention being that defendants made the beneficiary their own witness.   p. 464.

3. **WITNESSES.**—*Memory.—Refreshing by Copy of Instrument.*— A witness who, after refreshing his memory, does not remember the exact language of a written instrument, cannot use a copy made by some unknown person, which he has not compared with the original, to enable him to testify to the contents of such instrument, of which he does not have an independent recollection even after looking at the supposed copy.   p. 464.

4. **EVIDENCE.**—*Copy of Written Instrument.—Testimony as to Correctness.—Verification.*—A witness cannot be permitted to

testify that a copy of a writing is correct and accurate, when he did not make the copy and has not compared it nor verified it in any way except by his recollection of what he wrote twenty years before. p. 465.

5. WILLS.—*Establishment of Lost Will.—Copy of Lost Will.—Admissibility.*—Until identified by competent evidence as the copy of a valid will, duly executed, which was in existence at the time of the testator's death, or which had been destroyed in his lifetime without his consent, or otherwise fraudulently disposed of, such copy is not admissible, under §3167 Burns 1914, §2609 R. S. 1881, as to proof required to establish a lost will. p. 465.

From Warren Circuit Court; *James P. Wason*, Special Judge.

Action by Blanche P. Hottenstein against Robert Hottenstein. From a judgment for the named plaintiff, the defendant appeals. *Reversed.*

*Charles Valentine McAdams, Clyde Hugh Jones* and *John J. Hall* for appellants.

*Victor H. Ringer*, for appellee.

EWBANK, C. J.—This was an action to establish and probate an alleged lost or destroyed will. It was commenced by the father of appellee in the names of himself and his daughter, before appellee had reached the age of twenty-one years. The complaint alleged and the court found that in 1894, Charles A. Hottenstein made a will by which he gave to appellee's father and appellant a life estate in certain lands, with remainders to their children, respectively, and caused it to be duly witnessed; that in 1898, he added a codicil, and caused it to be duly witnessed; that he died in 1903, and that after his death the will and codicil were lost or destroyed. Appellee's father continued as an active plaintiff throughout the trial, but upon issues formed on an answer and cross-complaint the court found and adjudged that by the execution of certain deeds, he had

estopped himself to claim any interest under the will in the property devised of which appellant claims ownership, and that appellant was entitled to quiet his title as against him to certain lands mentioned in the alleged will. An issue was also formed on a cross-complaint to contest the alleged will for the statutory reasons. The court found and adjudged that the contents of the alleged lost and destroyed will were just as they were set out in the complaint and that both were valid, and entered a decree probating them, from which judgment the appellant perfected an appeal in term. The only error assigned is overruling the motion for a new trial.

A plaintiff, appellee's father, was offered as a witness on behalf of himself and appellee, and over objections and exceptions by appellant, was permitted to

1. testify that after the father's death some papers were found in his desk which purported to be his will and a codicil thereto; that they were in the handwriting of Judge Rabb; that the signature to each was the genuine signature of the alleged testator, the father of this witness; that the signatures of the witnesses to such will were the genuine signatures of Joseph M. Rabb and Peter W. Fleming; that the signatures of the witnesses to such codicil were the genuine signatures of Joseph M. Rabb and John G. McCord; that he knew the handwriting of the testator and of each of the witnesses; that he made a copy of the will and codicil; and that a certain writing which he produced was that copy, and was a true copy of the papers so found which purported to be the will and codicil. All of the alleged witnesses to the supposed will and codicil were alive and testified at the trial, though one witness to the will remembered nothing about signing, and one witness to the codicil remembered only that he signed as a witness to what the decedent said was a codicil to his will, but knew nothing of its contents.

Section 522 Burns 1914, §499 R. S. 1881 enacts that: "In all suits by or against heirs or devisees, founded on a contract with or demand against the ancestor, to obtain title to or possession of property, real or personal, of, or in right of, such ancestor, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter which occurred prior to the death of the ancestor." Under this statute the plaintiff was not a competent witness to prove, either directly or indirectly, that his father signed and certain other persons witnessed the alleged will and codicil in his lifetime, whether by proving the handwriting of the testator and the witnesses, or otherwise. *Merritt* v. *Straw, Admr.* (1893), 6 Ind. App. 360, 33 N. E. 657; *Belledin* v. *Gooley* (1901), 157 Ind. 49, 60 N. E. 706; *Hiatt* v. *McColley* (1908), 171 Ind. 91, 85 N. E. 772; *Wiley* v. *Gordon* (1914), 181 Ind. 252, 104 N. E. 500.

Neither was he competent to testify that the paper produced by him was a copy of his father's will, or of papers bearing the genuine signatures of his father and certain witnesses, or otherwise to identify the papers found in his father's desk as having been executed by him in his lifetime, and it was error to admit his testimony relating to those subjects.

But we think he would not be incompetent to testify to the mere fact that after his father's death certain papers were found in the father's desk, and that he made a copy of those papers, and to identify that copy, if these facts were otherwise shown by competent evidence to be pertinent and material, since all of this related to what happened after the death of the ancestor. Though any identification of the papers with the father in his lifetime, beyond the mere statement where and when they were found after his death, could only be made by other evidence than testimony of the plaintiff.

Counsel for the appellee insist that upon cross-exam-

ination of this witness, after he had so testified, the appellants went outside of the subjects of his examination in chief, and made him their own witness, by asking him certain questions not 2. bearing directly upon his knowledge of the testator's handwriting, but rather upon his knowledge of the handwriting in which certain papers were drawn to which his father's name was subscribed, and by asking him certain questions as to his business relations with his father in connection with some contracts produced by him bearing what he said was his father's signature, he having testified in chief that he knew the handwriting of his father, of the person who wrote the alleged lost will and codicil, and of each of the witnesses, as above stated. But we do not think that this cross-examination had the effect to render harmless the error previously committed in admitting the testimony of the plaintiff, over an objection and exception, as to matters about which he was not competent to testify.

The witness, Joseph M. Rabb, testified on preliminary examination that he did not remember the exact language of the will and codicil, nor the order in which their several provisions were stated, nor 3. the details of the will, even after having read the alleged copy; that he had not seen the will or codicil since the codicil was written twenty years before, that he did not know in whose handwriting the copy was made, did not see the copy made nor see it compared with the original, and did not make a copy of the will nor cause a copy to be made under his direction, at any time, but that he had written the will, and knew and could give its general provisions, and that when he read the instrument, which purported to be a copy, his memory was so refreshed that he recognized it just like he could recognize a man's face. Over the objection and exception of appellant the witness was then permitted

to testify that the paper shown him was an exact copy of the will and the codicil, including the attestation clauses of both, just as he wrote them.   This was error.   A witness who, after refreshing his memory, does not remember the exact language of a written instrument, cannot use a copy made by some unknown person, which he has not compared with the original, to enable him to testify as to its contents, of which he does not have an independent recollection even after looking at the supposed copy.   *Jaques* v. *Horton* (1884), 76 Ala. 238; *Titus* v. *Gunn* (1903), 69 N. J. Law 410, 55 Atl. 735; *Clark* v. *State* (1853), 4 Ind. 156; *Southern R. Co.* v. *State* (1905), 165 Ind. 613, 75 N. E. 272; 40 Cyc 2464.

And a witness cannot be permitted to testify that a copy of a writing is correct and accurate when he did not make the copy and has not compared it nor

4.   verified it in any way except by his recollection of what he wrote twenty years before.   *Nostrum* v. *Halliday* (1894), 39 Neb. 828, 58 N. W. 429; *Singer Mfg. Co.* v. *Riley* (1885), 80 Ala. 314; *In re Gazette* (1886), 35 Minn. 532, 29 N. W. 347; *McGinniss* v. *Sawyer* (1869), 63 Pa. St. 259; 40 Cyc 2459, 2460; 22 C. J. 1066, 1067.

Without any evidence that the papers found among the ancestor's effects were a will and codicil, duly executed and witnessed, or that what was offered in

5.   evidence correctly recited its terms as therein written, except the testimony of the plaintiff and of Judge Rabb, above referred to, the copy which plaintiff said he had made of those papers was admitted and read in evidence.   This was error.   Until identified by competent evidence as the copy of a valid will, duly executed, which was in existence at the time of the testator's death, or which had been destroyed in his lifetime without his consent, or otherwise fraudulently dis-

posed of (§3167 Burns 1914, §2609 R. S. 1881) the offered copy was not admissible.

The judgment is reversed, with directions to sustain appellant's motion for a new trial.